Charles C. Weller (SBN: 207034)
legal@cweller.com
CHARLES C. WELLER, APC
11412 Corley Court
San Diego, California 92126
Tel: 858.414.7465
Fax: 858.300.5137

Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACKIE LEE WILLIAMS, *individually and on behalf of all those similarly situated*,<br><br>*Plaintiff,*<br><br>v.<br><br>COVE DRINKS, INC., *a Delaware corporation,*<br><br>*Defendant.* | No. **'26CV3374 H    JLB**____<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Jackie Lee Williams ("Plaintiff"), individually and on behalf of all others similarly situated in the state of California, by and through undersigned counsel, hereby brings this action against Cove Drinks, Inc. ("Cove" or "Defendant"), alleging that its Cove probiotic sodas ("the Products"),[1] which are manufactured, packaged, labeled, advertised, distributed, and sold by Defendant, are misbranded and falsely advertised because they feature label claims falsely stating that they contain no artificial sweeteners, and upon information and belief and investigation of counsel alleges as follows:

---

[1] Among the flavors of the Products of which Plaintiff is currently aware are rainbow sherbert, pink slushie, galaxy pop, cranmerry, ice pop, blue jazz, orange cream, classic cola, root beer, smurfberry, green apple, cream soda, raspberry, pineapple, grape, lemon lime, orange, grapefruit, Dr. Cove, and cherry.

## PARTIES

1.    Plaintiff Jackie Lee Williams is and at all times relevant was a citizen of the state of California, domiciled in Lakeside, California in San Diego County.

2.    Defendant Cove Drinks, Inc. is a Delaware corporation with its principal place of business in Dover, Delaware.

## JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act, Pub. L. 109-2, 119 Stat. 4 (codified in scattered sections of Title 28 of the United States Code); specifically, under 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [that] is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

4.    Plaintiff seeks to represent Class members who are citizens of states different from the Defendant.

5.    The matter in controversy in this case exceeds $5,000,000 in the aggregate, exclusive of interests and costs.

6.    In addition, "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

7.    In the alternative, the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000, exclusive of interest and costs.

8.    This Court has personal jurisdiction over Defendant because this action arises out of and relates to Defendant's contacts with this forum.

9.    Those contacts include but are not limited to sales of the Products directly to commercial and individual consumers located in this district, including Plaintiff; shipping the Products to commercial and individual consumers in this district; knowingly directing advertising and marketing materials concerning the Products into this district through wires and

CLASS ACTION COMPLAINT

mails, both directly and through electronic and print publications that are directed to commercial and individual consumers in this district; and operating an e-commerce web site that offers the Products for sale to commercial and individual consumers in this district, as well as offering the Products for sale through third-party e-commerce websites, through both of which commercial and individual consumers residing in this district have purchased the Products.

10. Defendant knowingly directs electronic activity and ships the Products into this district with the intent to engage in business interactions for profit, and it has in fact engaged in such interactions, including the sale of the Products to Plaintiff.

11. Defendant also sells the Products to retailers and wholesalers in this district for the purpose of making the Products available for purchase by individual consumers in this district.

12. Plaintiff's losses and those of other Class members were sustained in this district.

13. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this district.

14. Venue is also proper pursuant to 28 U.S.C. § 1391(c)(2) because this Court maintains personal jurisdiction over Defendant.

## FACTUAL ALLEGATIONS

**I.    WILLIAMS, LIKE MANY CONSUMERS, BUYS "NATURAL" BEVERAGES BELIEVING THEM TO BE HEALTHIER.**

15. Consumers increasingly seek foods and beverages marketed as free from artificial sweeteners because consumers often associate products without artificial sweeteners with a healthier lifestyle and healthier, less processed food alternatives. Representations regarding the presence or absence of artificial sweeteners are therefore material to reasonable consumers' purchasing decisions.

16. This focus on naturalness is driven in large part by consumers' belief that "natural" foods are healthier and better for them. That consumers conflate claims of "naturalness" with an assertion that a food is healthy is well established in relevant academic literature on consumer behavior. One survey of more than 4,000 European consumers, for example, found that more

than three-quarters of respondents perceived a close connection between claims that a food was "natural" and claims that it was "healthy."[2]

17.     Numerous academic studies and surveys of consumers have noted that "food naturalness … is frequently linked to healthiness, freshness, and organic or locally produced foods" in consumers' perception.[3]

18.     A review of consumer surveys from more than 32 countries found that naturalness is "crucial" to consumers, and that for food manufacturers, "neglecting the aspect of naturalness in the food industry may be very costly in the end."[4]

19.     Plaintiff Jackie Lee Williams is one such consumer: A longtime soda drinker, she was advised by friends and family to seek out healthier beverage alternatives. She sought beverages *inter alia* without artificial sweeteners, and associated products marketed as being free from artificial ingredients with a healthier lifestyle and healthier alternatives.

20.     Williams purchased a multi-pack of the "Dr. Cove" flavor of the Products—which is formulated to replicate traditional Dr. Pepper sodas—at a GTM Market in Santee, California (which is within San Diego County) on or about May 15, 2026.

21.     She also purchased a multi-pack of the same flavor of the Products in or around the first half of March 2026 from the same GTM Market in Santee, in San Diego County.

22.     Cove probiotic sodas are widely distributed through third-party websites such as Amazon.com, Walmart.com, Target.com, and the Defendant's website, as well as through national and regional retail grocery stores such as Whole Foods, Sprouts, and Albertsons.

---

[2] Kampffmeyer Food Innovation Study (2012), *at* http://goodmillsinnovation.com/sites/kfi.kampffmeyer.faktor3server.de/files/attachments/1_pi_kfi_cleanlabelstudy_english_final.pdf.
[3] *See, e.g., id.* at 45 (citing research).
[4] Sergio Roman, Michael Siegrist, and Luis Manuel Sanchez-Siles, *The importance of food naturalness for consumers: Results of a systematic review*, 67 TRENDS IN FOOD SCI. & TECH. 44 (Sept. 2017), *at* https://www.sciencedirect.com/science/article/pii/S092422441730122X?via%3Dihub.

23. On the back label, the Products claim to contain "No Artificial Sweeteners," as this photo of a remaining can of the multi-pack of Cove soda that Williams purchased clearly shows:



24. Williams purchased the Products *inter alia* in reliance on this "No Artificial Sweeteners" claim, believing (as do millions of other consumers) that "natural" products without artificial ingredients, including artificial sweeteners, are healthier and less processed and are better for them than foods that are highly processed or contain artificial ingredients.

25.    Throughout the putative Class period—like the Dr. Cove flavor purchased by Plaintiff—each flavor of Cove sodas has featured a "No Artificial Sweeteners" representation on the back label, presented in varying formats, as these photos of Cove's raspberry, root beer, classic cola, and cream soda flavors show:

CLASS ACTION COMPLAINT






CLASS ACTION COMPLAINT

26.     Moreover, throughout the putative Class period, Cove engaged in a wide-ranging marketing campaign through the Internet and social media that emphasized its "No Artificial Sweeteners" representation. This included frequent Facebook ads such as this one:



27.     Or this video used on the Cove Amazon.com page and the Cove page at Target.com, which can still be found at https://www.amazon.com/Cove-Zero-Sugar-Soda-Probiotic-Drink-Caffeine-Free/dp/B0C8N746DY?th=1 and https://www.target.com/p/cove-ice-pop-soda-12-fl-oz-can/-/A-94307209#lnk=sametab (last visited June 2, 2026):

CLASS ACTION COMPLAINT



Cove Probiotic Soda

Cove Soda

28.    Or    this    advertisement    from    Cove's    Walmart    sales    page    (*see* https://www.walmart.com/ip/Cove-Grape-Probiotic-Soda-12-fl-oz-Case-of-12/2483965832 [last visited June 2, 2026]), which twice describes the Products as "naturally sweetened" and adds that they have "a pleasant taste without artificial additives":



## II.    COVE'S "NO ARTIFICIAL SWEETENERS" CLAIM IS FALSE.

29.    The "No Artificial Sweeteners" claim made by Cove on its cans and in its advertising is false. The soda purchased by Williams contains 10 grams of erythritol, and on information and belief, every flavor of the Products contains 8-12 grams of erythritol, generally the second most common ingredient in the Products after water. The Products use erythritol as a sweetener.

30.    The erythritol used in the Products—and used in every mass-produced food—is commercially manufactured through industrial fermentation and multi-step processing. Reasonable consumers would not understand such an ingredient to be consistent with a representation that the Products contain "No Artificial Sweeteners."

31.    Erythritol is a sugar alcohol that is naturally found in low levels in fruits such as cantaloupes and grapes, and is also produced in the human body. However, it is not economically feasible to use erythritol extracted from fruits in commercial food products because of the very low levels found in fruits. For example, the erythritol content in one pound of melons, grapes, or pears is less than 0.02 grams—meaning, 50 pounds of fruit would be required to extract a single gram of erythritol.

32.    Because of the extraordinarily high cost of natural erythritol extracted from fruits, the erythritol used in mass-produced foods such as the Products—often at high levels, much higher than found naturally in fruits—is manufactured rather than extracted from naturally occurring sources.

33.    Commercial erythritol such as that used in the Products is manufactured through a multistep process that starts with fermenting a strain of the microorganism *Moniliella pollinis*, a yeast, in a culture that contains liquid glucose or sucrose, an antifoaming agent, and a carbohydrate source that is usually corn starch from corn starch feedstocks, which do not contain erythritol in any amount.[5] There is no fruit substrate in the corn- and yeast-based, commercially produced erythritol used in foods such as the Products.

---

[5] Donald F. Schmidt, *GRAS Determination for Erythritol for Use in Human Food* at 9, TOXSTRATEGIES (June 5, 2018), https://www.fda.gov/media/132946/download (submitted to and published by the FDA) (last visited March 7, 2023).

34. The substance resulting from this fermentation process is then purified using a chromatography resin and ion exchange resins. Activated charcoal is used to remove color and trace elements. This multi-step fermentation and chemical processing is repeated until it yields a white crystalline powder. The resulting crystals are then washed and packaged for commercial use.[6]

35. The resulting product is approximately 70 percent as sweet as table sugar and is commercially produced for use as a sweetener in foods and beverages, which is its only purpose in food formulations.

36. Since commercial erythritol is manufactured through industrial fermentation and chemical processing—from processed corn/wheat starch, fermented with engineered microbes, and refined into a crystalline sweetener—it is a synthetic sweetener, which mimics but is not derived from the natural erythritol found in fruits.

37. Reasonable consumers would not expect commercially manufactured erythritol produced from the multi-step process described herein to be present in beverages labeled "No Artificial Sweeteners."

38. When used as a sweetener in foods, erythritol levels are typically more than 1,000-fold greater than levels found naturally in fruits.

## III. PLAINTIFF RELIED ON COVE'S "NO ARTIFICIAL SWEETENERS" CLAIM.

39. Consumers especially rely on label claims made by food product manufacturers such as Defendant, as they cannot confirm or disprove those claims simply by viewing or even consuming the Products.

40. Plaintiff reviewed the front and back label of the Products at the time of her purchase within San Diego County. She reasonably understood the Defendant to be claiming that the Products contained no artificial sweeteners. Plaintiff viewed beverages marketed as containing "No Artificial Sweeteners" as healthier alternatives and considered that representation important to her purchasing decision.

---

[6] Schmidt, *supra*, at 9-10.

-11-

CLASS ACTION COMPLAINT

41. Plaintiff reasonably relied on the "No Artificial Sweeteners" label claim such that she would not have purchased the Products if the truth about them was known, or would have only been willing to pay a substantially reduced price for the Products had she known that Defendant's representation was false and misleading.

42. In the alternative, because of its deceptive and false labelling statements, Defendant was enabled to charge a premium for the Products relative to key competitors' products, or relative to the average price charged in the marketplace.

43. Plaintiff suffered economic injury by Defendant's fraudulent and deceptive conduct as stated herein, and there is a causal nexus between Defendant's deceptive conduct and Plaintiff's injury.

44. Every flavor of Cove soda not only features the same deceptive "No Artificial Sweetener" representation, it is packaged in a similar fashion (*i.e.*, uses similar fonts, graphical elements, and packaging design, including such repeated advertising claims as "Trust Your Gut!"); is sold for a similar per-unit price; and is formulated with 8-12 grams of synthesized artificial erythritol.

45. Because of the substantial similarities of product, price, appearance, and deceptive claim as between each flavor of the Products, Plaintiff is an adequate and appropriate class representative despite not having purchased every flavor of the Products.

## IV. PLAINTIFF'S LEGAL REMEDIES ARE INADEQUATE.

46. As described herein, Plaintiff suffered an actual and imminent threat of future harm that cannot be cured with monetary damages. For this harm, Plaintiff lacks an adequate remedy at law and requires injunctive relief.

47. Should this Complaint be amended following the running of the 30-day notice period under Cal. Civil Code section 1782(c), Plaintiff will seek damages and, in the alternative, equitable restitution. Plaintiff seeks restitution under the Unfair Competition Law and False Advertising Law in the alternative because she has no adequate remedy at law.

48.    A legal remedy is not adequate if it is not as certain as an equitable remedy. To obtain a full refund as damages, Plaintiff must show that the Products she received have essentially no market value. In contrast, Plaintiff can seek restitution without making this showing. This is because Plaintiff purchased Products that she would not otherwise have purchased, but for Defendant's misrepresentations. Obtaining a full refund at law is less certain than obtaining a refund in equity.

49.    Also, winning damages under the Consumers Legal Remedies Act requires additional showings not required under equitable causes of action. For example, the CLRA prohibits only particular categories of deceptive conduct. By contrast, equitable causes of action such as unjust enrichment, the Unfair Competition Law, and the False Advertising Law broadly prohibit "unfair" conduct.

50.    By the same token, Plaintiff's common law claims require additional showings, compared to her unjust enrichment claim. For example, to prevail on her breach of warranty claim, Plaintiff needs to show that the statements she challenges constitute a warranty and that the warranty was part of the basis of the bargain. No such showings are required under an unjust enrichment theory. And unjust enrichment exists in part because contractual claims are often more difficult to establish. In this way, Plaintiff's UCL, FAL, and unjust enrichment claims are more certain than her legal claims.

51.    Finally, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient. The need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

## CLASS ACTION ALLEGATIONS

52.    Plaintiff brings this action individually and as representative of all those similarly situated pursuant to Federal Rule of Civil Procedure 23 on behalf of all consumers in the state of California who purchased Cove sodas marketed with the representation "No Artificial Sweeteners" that contained erythritol within four years prior to the filing of this Complaint.

53.    Excluded from the Class are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors. Also excluded are any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

54.    Plaintiff reserves the right to alter the Class definition, and to amend this Complaint to add additional Subclasses, as necessary to the full extent permitted by applicable law.

55.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

56.    **Numerosity – Rule 23(a)(1)**: The size of the Class is so large that joinder of all Class members is impracticable. Plaintiff believes and avers there are thousands of Class members geographically dispersed throughout the state of California.

57.    **Existence and Predominance of Common Questions of Law and Fact – Rule 23(a)(2), (b)(3)**: There are questions of law and fact common to the Class. These questions predominate over any questions that affect only individual Class members. Common legal and factual questions and issues include but are not limited to:

a.    Whether the marketing, advertising, packaging, labeling, and other promotional materials for Defendant's Products is misleading and deceptive;

b.    Whether a reasonable consumer would understand Defendant's "No Artificial Sweeteners" to mean that the Products contained no artificial sweeteners such as erythritol, and reasonably relied upon that representation;

c.    Whether Defendant was unjustly enriched at the expense of the Plaintiff and Class members;

d.    Whether Defendant breached an express warranty;

e.    the proper scope of injunctive relief; and

f.    the proper amount of attorneys' fees.

-14-

CLASS ACTION COMPLAINT

58.     Defendant engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of the Class. Similar or identical violations of law, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate this action. The common questions will yield common answers that will substantially advance the resolution of the case.

59.     In short, these common questions of fact and law predominate over questions that affect only individual Class members.

60.     **Typicality – Rule 23(a)(3)**: Plaintiff's claims are typical of the claims of the Class members because they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

61.     Specifically, all Class members, including Plaintiff, were harmed in the same way due to Defendant's uniform misconduct described herein; all Class members suffered similar economic injury due to Defendant's misrepresentations; and Plaintiff seeks the same relief as the Class members.

62.     There are no defenses available to Defendant that are unique to the named Plaintiff.

63.     **Adequacy of Representation – Rule 23(a)(4)**: Plaintiff is a fair and adequate representative of the Class because Plaintiff's interests do not conflict with the Class members' interests. Plaintiff will prosecute this action vigorously and is highly motivated to seek redress against Defendant.

64.     Furthermore, Plaintiff has selected competent counsel who are experienced in class action and other complex litigation. Plaintiff and Plaintiff's counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

65.     **Superiority – Rule 23(b)(3)**: The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for at least the following reasons:

a.  the damages individual Class members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct such that it would be virtually impossible for the Class members individually to redress the wrongs done to them. In fact, they would have little incentive to do so given the amount of damage each member has suffered when weighed against the costs and burdens of litigation;

b.  the class procedure presents fewer management difficulties than individual litigation and provides the benefits of single adjudication, economies of scale, and supervision by a single Court;

c.  the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant; and

d.  the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would be dispositive of the interests of other Class members or would substantively impair or impede their ability to protect their interests.

66.  Unless the Class is certified, Defendant will retain monies received as a result of its unlawful and deceptive conduct alleged herein.

67.  Unless a class-wide injunction is issued, Defendant will likely continue to advertise, market, promote, and sell its Products in an unlawful and misleading manner, as described throughout this Complaint, and members of the Class will continue to be misled, harmed, and denied their rights under the law. Defendant continues to mislabel the Products in the manner described herein and sell them to the consuming public. Plaintiff would purchase the Products again if the labeling were corrected or if Defendant ceased using misleading representations, but presently cannot rely on Defendant's labeling. An injunction prohibiting future deceptive labelling is therefore warranted, would provide Plaintiff and the Class relief, and would permit Plaintiff to purchase the Products again.

CLASS ACTION COMPLAINT

68.     Furthermore, Plaintiff has not merely alleged an "informational" injury, but has also alleged that Defendant has been enabled to charge a price premium for the Products. Plaintiff has therefore alleged that compliance with state labelling law would cause a decrease in the price of the Products at which Plaintiff and members of the Class would be willing to buy the Products. As a result, Plaintiff has alleged more than simply an interest in Defendant telling the truth on its labels, but an economic injury that further supports prospective injunctive relief.

69.     **Ascertainability**. To the extent ascertainability is required, the Class members are readily ascertainable from Defendant's records and/or its agents' records of retail and online sales, as well as through public notice.

70.     Defendant has acted on grounds applicable to the Class as a whole, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

## COUNT 1
## VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT
### CAL. CIV. CODE § 1750 *et seq.*

71.     Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

72.     Plaintiff is a "consumer" within the meaning of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1761(d).

73.     The sale of Defendant's Products to Plaintiff and Class members was a "transaction" within the meaning of the CLRA, Cal. Civ. Code § 1761(e).

74.     The Products purchased by Plaintiff and Class members are "goods" within the meaning of the CLRA, Cal. Civ. Code § 1761(a).

75.     As alleged herein, Defendant's business practices are a violation of the CLRA because Defendant deceptively failed to reveal facts that are material in light of the claims that were made by Defendant on the labels of its Products and in advertising materials.

76.     Defendant's ongoing failure to provide material facts about its Products on its labels and in advertising materials violates the following subsections of Cal. Civ. Code § 1770(a) in at least these respects:

-17-

CLASS ACTION COMPLAINT

a. Defendant's acts and practices constitute misrepresentations that its Products have characteristics, benefits, or uses which they do not have;

b. Defendant misrepresented that its Products are of a particular standard, quality, and/or grade, when they are of another; and

c. Defendant's acts and practices constitute the advertisement of goods, without the intent to sell them as advertised.

77. By reason of the foregoing, Plaintiff and the Class have been irreparably harmed, entitling them to injunctive relief.

78. Plaintiff presently seeks injunctive relief under the CLRA and reserves any claim for damages under the CLRA pending compliance with the statutory notice requirements.

79. Pursuant to Cal. Civ. Code §§ 1770 and 1780, Plaintiff is entitled to enjoin publication of misleading and deceptive nutritional labels on Defendant's Products and to recover reasonable attorneys' fees and costs.

## COUNT 2
## UNJUST ENRICHMENT

80. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative in the event that Plaintiff has an inadequate remedy at law.

81. Under California law, a claim for unjust enrichment "describe[s] the theory underlying a claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quoting 55 *Cal. Jur.* 3d *Restitution* § 2). Thus, when a plaintiff alleges unjust enrichment, the Court should "construe the cause of action as a quasi-contract claim seeking restitution." *Rutherford Holdings, LLC v. Plaza Del Rey* 223 Cal. App. 4th 221, 225 (2014). Courts in California have allowed unjust enrichment and CLRA claims to proceed in the alternative. *See Scheibe v. Livwell Prods., LLC,* No. 23-cv-216, 2023 WL 4414580, at *8 (S.D. Cal. 2023).

82. Defendant, through its marketing and labeling of the Products, misrepresented and deceived consumers in the manner described herein.

-18-

83. Defendant did so for the purpose of enriching itself and it in fact enriched itself by doing so.

84. Consumers conferred a benefit on Defendant by purchasing the Products, including an effective premium above their true value. Defendant appreciated, accepted, and retained the benefit to the detriment of consumers.

85. Defendant continues to possess monies paid by consumers to which Defendant is not entitled.

86. Under the circumstances it would be inequitable for Defendant to retain the benefit conferred upon it and Defendant's retention of the benefit violates fundamental principles of justice, equity, and good conscience.

87. Plaintiff seeks disgorgement of Defendant's ill-gotten gains and restitution of Defendant's wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

88. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

## COUNT 3
## BREACH OF EXPRESS WARRANTY

89. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

90. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, made the express warranties described herein.

91. Defendant's warranties, and its affirmations of fact and promises made to Plaintiff and the Class and regarding the Products, became part of the basis of the bargain between Defendant and Plaintiff and the Class, creating a warranty that the Products would conform to those affirmations of fact, representations, promises, and descriptions.

92. The Products do not conform to the express warranties described herein.

CLASS ACTION COMPLAINT

93. As a direct and proximate cause of Defendant's breach of warranty, Plaintiff and Class members have been injured and harmed because: (a) they would not have purchased the Products on the same terms if they knew the truth about the Products; (b) they paid a price premium based on Defendant's warranties; and (c) the Products do not have the characteristics, uses, or benefits that were promised.

**COUNT 4**
**VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE**
**SECTION 17200 et seq. — "UNFAIR" CONDUCT**

94. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

95. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth herein.

96. Defendant's actions as alleged in this Complaint constitute "unfair" conduct within the meaning of California Business and Professions Code Section 17200, *et seq*.

97. Defendant's business practices, as alleged herein, are "unfair" because it represents that the Products contain "No Artificial Sweeteners" when, in fact, they are sweetened with artificial erythritol.

98. As a result of this "unfair" conduct, Plaintiff expended money and engaged in activities she would not otherwise have expended or conducted.

99. Defendant's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.

100. Defendant publicly disseminated untrue or misleading representations regarding the contents of its Products, which it knew, or in the exercise of reasonable care should have known, were untrue or misleading.

101. Pursuant to Business and Professions Code Section 17203, Plaintiff seeks an order of this Court enjoining Defendant from continuing to engage in "unfair" business practices and

-20-

any other act prohibited by law, including those acts set forth in this Complaint, and further seeks all other relief allowable under Business and Professions Code Section 17200, *et seq*.

**COUNT 5**
**VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE**
**SECTION 17200 *et seq*. — "FRAUDULENT" CONDUCT**

102.   Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

103.   Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

104.   Defendant's actions as alleged in this Complaint constitute "fraudulent" conduct within the meaning of California Business and Professions Code Section 17200 *et seq*.

105.   Defendant's business practices, as alleged herein, are "fraudulent" because it represents that the Products contain "No Artificial Sweeteners" when, in fact, they are sweetened with artificial erythritol.

106.   As a result of this "fraudulent" conduct, Plaintiff expended money and engaged in activities she would not otherwise have expended or conducted.

107.   Defendant's wrongful business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.

108.   Defendant publicly disseminated untrue or misleading representations regarding the content of its Products, which it knew, or in the exercise of reasonable care should have known, were untrue or misleading.

109.   Pursuant to Business and Professions Code Section 17203, Plaintiff seeks an order of this Court enjoining Defendant from continuing to engage in "fraudulent" business practices and any other act prohibited by law, including those acts set forth in this Complaint, and further seeks all other relief allowable under Business and Professions Code Section 17200, *et seq*.

**COUNT 6**
**VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE**
**SECTION 17200 *et seq*. — "UNLAWFUL" CONDUCT**

110.   Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

111.   Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

112.   Defendant's actions as alleged in this Complaint constitute "unlawful" conduct within the meaning of California Business and Professions Code Section 17200, *et seq*. Defendant's conduct is unlawful because it violates, *inter alia*, the CLRA, California's False Advertising Law, and California statutes prohibiting false and misleading food labeling, including California's Sherman Food, Drug, and Cosmetic Law.

113.   Defendant's business practices, as alleged herein, are "unlawful" because it represents that the Products contain "No Artificial Sweeteners" when, in fact, they are sweetened with artificial erythritol.

114.   As a result of this "unlawful" conduct, Plaintiff expended money and engaged in activities she would not otherwise have expended or conducted.

115.    Defendant's business practices alleged herein constituted, and continue to constitute, a continuing course of unfair competition since it continues to market and sell its products in a manner that offends public policy and/or in a fashion that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to its customers.

116.   Defendant publicly disseminated untrue or misleading representations regarding the contents of its Products, which it knew, or in the exercise of reasonable care should have known, were untrue or misleading.

117.   Pursuant to Business and Professions Code Section 17203, Plaintiff seeks an order of this Court enjoining Defendant from continuing to engage in "unlawful" business practices and any other act prohibited by law, including those acts set forth in this Complaint, and further seeks all other relief allowable under Business and Professions Code Section 17200, *et seq*.

-22-

## COUNT 7
## VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE SECTION 17500 *et seq.*

118. Plaintiff realleges the preceding paragraphs as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

119. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth above.

120. Defendant engaged in advertising and marketing to the public and offered the Products for sale on a nationwide basis, including in California.

121. Defendant engaged in the advertising and marketing alleged herein with the intent to directly or indirectly induce the sale of the Products to consumers.

122. Defendant's advertisements and marketing representations regarding the characteristics of the Products were false, misleading, and deceptive as set forth above.

123. At the time it made and disseminated the statements alleged herein, Defendant knew or should have known that the statements were untrue or misleading, and acted in violation of Business and Professions Code Section 17500, *et seq.*

124. Plaintiff seeks injunctive relief and all other relief allowable under Business and Professions Code Section 17500, *et seq.*

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court grant the following relief against Defendant:

a. Certifying the Class;

b. Declaring that Defendant violated the statutes alleged herein and/or was unjustly enriched and/or breached an express warranty and ordering Defendant to make restitution and/or disgorgement to the extent permitted by law;

c. Ordering an awarding of injunctive relief as permitted by law, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

-23-

d.  Ordering Defendant to pay reasonable attorneys' fees and litigation costs to Plaintiff;

e.  Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

f.  Such other relief as the Court may deem just and proper.

TRIAL BY JURY IS DEMANDED ON ANY COUNTS SO TRIABLE.

Respectfully submitted,

/s/ *Charles C. Weller*
Charles C. Weller (Cal. SBN: 207034)
Attorney for Plaintiff

June 3, 2026

-24-

CLASS ACTION COMPLAINT